# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**SETA ROSE MAMMOLA**,                           Chapter 7
     Debtor                           Case No. 10-15148

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ROBERT J. MAMMOLA,**
     Plaintiff
v.                                              Adv. P. No.  14-1249
**KATHLEEN P. DWYER, as TRUSTEE
AND MacLEAN HOLLOWAY
DOHERTY ARDIFF & MORSE, P.C.,**
     Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Defendants' Motion to Dismiss Amended Complaint

pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P. 12(b)(6) filed

by the Defendants, Kathleen P. Dwyer, the Chapter 7 Trustee ("Dwyer" or the "Trustee") of

the bankruptcy estate of Seta Rose Mammola (the "Debtor"), and the law firm in which she

is a partner, MacLean Holloway Doherty Ardiff & Morse, P.C. (the "Firm").  As grounds for

their Motion, the Defendants state:

> . . . Plaintiff Robert J. Mammola ("the Plaintiff") lacks standing to assert and
> prosecute his claims against the Defendants. In addition, the Plaintiff's
> Amended Complaint fails to comply with this Court's order dated February 9,

2015, which was issued in response to the Defendants' motion to dismiss the Plaintiff's original complaint. Finally, the Defendants state that the Plaintiff still has not properly served them with process.

Robert J. Mammola ("Robert Mammola"), the Plaintiff and former debtor in Case No. 10-18070-JNF, filed a Response, asserting his standing to sue the Defendants and alluding to injuries he claims he suffered as a result of the Defendants' conduct. The material facts necessary to resolve the instant dispute can be discerned from the record of proceedings in the Debtor's case and that of Robert Mammola; a hearing is unnecessary to resolve the Defendants' Motion.[1] For the reasons set forth below, the Court shall enter an order granting the Defendants' Motion to Dismiss Robert Mammola's Amended Complaint.

## II. BACKGROUND

A. The Bankruptcy Case filed by Seta Rose Mammola

The Debtor filed a voluntary Chapter 11 petition on May 12, 2010. At the time she commenced her Chapter 11 case, she was represented by counsel. On June 4, 2010, she filed Schedules and a Statement of Financial Affairs together with other required documents. On Schedule A-Real Property, she listed the following:

Commercial and Residential Property located at 507-519 Main Street; 521-535 Main Street; 537-539 Main Street; 543 Main Street; 545-549 Main Street; 2-4 Bickford Road; 11 Bickford Road and 12 Bickford Road, Malden, MA (This property is being held in The Triple-M Realty Trust of which Debtor is Trustee and one of 4 beneficiaries);

---

[1] The Court may take judicial notice of its docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir.1999), *cert. denied,* 530 U.S. 1230 (2000) ("The bankruptcy court appropriately took judicial notice of its own docket.").

Commercial and Residential Property located at 10 Yeamans Street and 280 - 288 Broadway, Revere, MA (This property is being held in The Ten Yeamans Street Realty Trust of which Debtor is Trustee and one of 4 beneficiaries);

Multi-Family residence located at 14 Yeamans Street, Revere, MA (This property is being held in The Fourteen Yeamans Street Realty Trust of which Debtor is Trustee and one of 4 beneficiaries); and

Single Family Residence located at 34 Mammola Way, Medford, MA (This property is being held in The Mammola Way Realty Trust of which Debtor is Trustee and one of 2 beneficiaries).[2]

Prior to filing her Schedules and Statement of Financial Affairs, the Debtor filed an Emergency Motion for Interim and Final Authority to Use Cash Collateral and Granting Adequate Protection.  In that motion, she sought authority to use the collateral of the holder of mortgages on the Trust properties, namely Mt. Washington Bank, a Division of East Boston Savings Bank, and to grant it replacement liens as adequate protection for any diminution in value which might result from her use of cash collateral.  In addition, she disclosed:

The Debtor is a married woman and has been married to her spouse, Robert J. Mammola, for 21 years. She maintains a separate household. She has one daughter and two step daughters. She has been employed part time as a Day Care Provider at Bright Horizons Day Care Center, 176 Second Avenue, Waltham, Massachusetts since September 2009. Prior to September, the Debtor was a homemaker. The Debtor is the trustee to and has beneficial interests in several nominee trusts that hold title to real estate. The Debtor is the trustee of and has a 1/3 [sic] beneficial interest in The Mammola Way Realty Trust [sic], which holds title to a single family residence in Medford, MA. The Debtor is the trustee of and has a 1/4 beneficial interest in the following trusts: the Triple-M Realty Trust, which holds title to commercial/residential real estate in Malden, MA consisting of 25 units; the Fourteen Yeamans Street Realty Trust, which holds title to a single family residence in Revere, MA; and the Ten Yeamans Street Realty Trust, which holds title to 31 commercial/residential

---

[2] The Debtor also listed her interests in the Trusts on Schedule B-Personal Property.

condominium units also in Revere, MA. The Debtor receives compensation as trustee from the various trusts.

***

The Debtor purchased the above real estate and placed them into nominee trusts in 1994 and again in 2001 and 2004. The aggregate current value of the properties is approximately $5,795,000.00. Each of the properties is encumbered by mortgages, the aggregate of which is approximately $3,534,947.10, and all of which are current. Each of the properties is covered by insurance which is also current. At some point, the Debtor became delinquent in the payment of taxes to the City of Malden of approximately $220,000.00 and to the City of Revere of approximately $80,000.00 in real estate taxes.

On June 18, 2010, East Boston Savings Bank, successor in interest to The Mt. Washington Cooperative Bank d/b/a Mt. Washington Bank (the "Bank"), filed an Objection to the Debtor's proposed use of cash collateral, asserting that it was the holder of mortgages and security agreements as well as collateral assignments of rents in the properties held in the Triple-M Realty Trust, the 10 Yeamans Street Realty Trust and the 14 Yeamans Street Realty Trust (collectively, the "Trusts").  While noting the substantial unpaid real estate taxes and unpaid water and sewer charges relating to the properties held in the Trusts, it stated that it had accelerated all the notes with respect to the Trusts, adding that on October 27, 2009, the Debtor and Robert Mammola had commenced an action against it in the Middlesex Superior Court, Department of the Trial Court, in which they asserted  "lender liability" claims, resulting from the Bank's refusal to make further loans to the Mammolas to pay their real estate taxes without cross-collateralization.  The Bank represented that its motion to dismiss the Mammolas' state court complaint was allowed on February 2, 2010. In addition, it represented that it had filed a counterclaim in the state court proceeding seeking to foreclose

4

its mortgages on the Trust properties, thereby precipitating the Debtor's Chapter 11 filing to prevent foreclosure.

The Bank further represented in its Objection to the Debtor's Emergency Motion for Interim and Final Authority to Use Cash Collateral that Robert Mammola testified at a deposition conducted during the Middlesex Superior Court litigation that he managed all the family's real estate and took all the net rents (estimated at $150,000) as his management fee. It also indicated that the Debtor testified that she had no involvement in decision making regarding the Trusts, despite her name on bank accounts.  The Bank added that "[i]n recent refinancing transactions, the Mammolas delivered to the Bank certain documents including beneficiaries [sic] certificates and directions of beneficiaries and personal financial statements which show Mr. Mammola and Mrs. Mammola as 50% beneficial interest  of the various trusts" . . .  and that "Mrs. Mammola and/or her daughters gave Mr. Mammola a power of attorney with respect to the trusts."[3]  The Bank added that the Debtor's proposed monthly payment of $5,800 for real estate taxes was insufficient, asserting that the Debtor would have to pay $6,200 per month to cover current taxes" and stated that "the Properties are encumbered by pre-petition municipal liens for in excess of $300,000.00 upon which interest accrues at the rate of at least 14% per annum and possibly higher for some portion of those

---

[3] The Bank attached copies of a "Beneficiaries Certificate/Direction of Beneficiaries" for each of the Trusts that bore the signatures of both the Debtor and Robert Mammola, as well as a financial statement executed by Robert Mammola, dated August 16, 2005, on which he listed ownership interests in the Trusts.  Robert Mammola executed that statement acknowledging that he "represents and warrants that the <u>information provided is true and complete</u> . . . ." (emphasis in original).

taxes."

Three days after filing its Objection to the use of cash collateral, the Bank filed an Assented to Motion for Limited Modification of the Automatic Stay to Continue Foreclosure Sales, to which it attached copies of the Trust documents as well as other exhibits. It subsequently filed, on December 1, 2010, a "Motion for Relief from the Automatic Stay with respect to 10 and 14 Yeamans Street Revere Massachusetts."

On June 22, 2010, the Debtor and the Bank filed a Joint Motion to Approve Stipulation with respect to the Debtor's authority to use cash collateral. The parties stipulated that the balance owed on the Triple-M Realty Trust note, as of the petition date, exclusive of attorneys' fees and expenses, was $1,163,854.69; the balance due on the 14 Yeamans Street Realty Trust note, as of the petition date, exclusive of attorneys' fees and expenses, was $371,185.51; and that the balance due on the 10 Yeamans Street Realty Trust note, as of the petition date, exclusive of attorneys' fees and expenses, was $1,712,237.51. Pursuant to the Stipulation, the Debtor agreed to make monthly payments under the Triple-M note in the amount of $7,729.81, plus 1/12th of the annual real estate taxes accruing and an amount equal to any interest accruing on unpaid real estate taxes so that the amount owing to the City of Malden for prepetition real estate tax claims would not increase. With respect to the 10 and 14 Yeamans Street Realty Trusts, the Debtor agreed to pay $10,351.92 and $1,807.77 monthly to the Bank, respectively, as well as 1/12th of the annual real estate taxes accruing and amounts necessary to prevent interest on the unpaid real estate taxes owed to the City of Revere from increasing postpetition. The Debtor further agreed to grant the Bank replacement liens and

6

granted the Bank a superpriority claim pursuant to 11 U.S.C. § 507(b) to the extent the

replacement liens were insufficient or otherwise failed to secure the adequate protection

granted.  The Debtor also acknowledged and confirmed the following:

> (a) the Bank holds valid, enforceable, non-avoidable and perfected pre-petition
> mortgage liens and security interests in the Properties and assignments of rents
> from the Properties in accordance with the Mortgages and the Assignments
> (collectively, the "Pre-Petition Liens") as security for payment of the Notes; (b)
> as of the Petition Date, the Pre-petition Liens had priority over any and all
> other liens on the Bank's Pre-petition Collateral, subject only to certain liens for
> unpaid real estate taxes; (c) the amounts asserted to be due and owing . . . [in]
> this Stipulation with respect to each of the Notes (the "Pre-petition
> Obligations") constitute legal, valid, binding, and non-avoidable obligations of
> the Debtors under the Loan Documents; and (d) no offsets, challenges,
> objections, defenses, claims, counterclaims of any kind or nature to any of the
> Pre-petition Liens or the Pre-petition Obligations exist, and no portion of the
> Pre-petition Liens or the Pre-petition Obligations is subject to any challenge or
> defense, including, without limitations, avoidance, recharacterization, or
> subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy
> law (exclusive of claims currently asserted in Middlesex Superior Court Action
> 09-03940).

On July 8, 2010, in the absence of objections, the Court granted the Joint Motion and

approved the Stipulation, authorizing the interim use of cash collateral through August 20,

2010 and continuing the hearing.  In the meantime, on July 27, 2010, Robert Mammola, acting

pro se, filed a voluntary Chapter 7 petition, and Harold B. Murphy, Esq. was appointed the

Chapter 7 Trustee.  Robert Mammola claimed no interest in the Trusts' properties or the 34

Mammola Way Realty Trust on either his Schedule A or Schedule B.

On August 20, 2010, the Debtor and the Bank filed a Joint Motion to Approve a

Stipulation, together with a Stipulation, regarding an extension of the Court's authorization

to use cash collateral in which they recognized that the Debtor had defaulted on her

obligation to make payments to the Bank on a timely basis as required by the Stipulation, as well as making payments to the City of Malden and the City of Revere for real estate taxes on a timely basis.[4]   On August 23, 2010, the Court approved the parties' Stipulation. Approximately two weeks later, the Debtor sought authority to employ a real estate broker to sell the properties held in the Triple-M Realty Trust. On September 22, 2010, the Court granted the Debtor's Application.

On October 4, 2010, at a hearing to consider an extension of the Debtor's authority to use cash collateral, the Court, in view of the Debtor's defaults under the cash collateral stipulation, *sua sponte* appointed a Chapter 11 Trustee.  Kathleen P. Dwyer was subsequently appointed as the Chapter 11 Trustee,  and the Court authorized her to employ the Firm as her counsel.  The Chapter 11 Trustee, on November 22, 2010, sought to employ the same real

---

[4] The parties stipulated:

Specifically, the Debtor has failed to timely make the monthly payment of $1,807.77 required under paragraph 3(a)(ii)(1) of the Stipulation for the month of July 2010. The Debtor made one payment of $1,807.77 on August 18, 2010 and shall make an additional payment of $1,807.77 on or before August 31, 2010 and shall thereafter timely make monthly payments under paragraph 3(a)(ii)(1) of the Stipulation. The Debtor shall continue to make all other payments to the Bank as and when they become due under the Stipulation.

The Debtor has also defaulted in timely paying certain real estate taxes and interest thereon as required under the Stipulation. Upon determination with the City of Revere and the City of Malden of the amounts owed for said real estate taxes and interest thereon which have accrued from and after the Petition Date, the Debtor shall pay such amounts to the respective municipalities and, in any event, such amounts shall be paid no later than September 15, 2010.

estate broker that the Debtor had engaged to procure a buyer for the properties held in the

Triple-M Realty Trust.

As noted above, at the end of 2010, the Bank filed a motion for relief from the

automatic stay with respect to the 10 and 14 Yeamans Street properties. It filed a similar

motion on January 7, 2011 in Robert Mammola's Chapter 7 case.  In its motion, the Bank

asserted that the real estate taxes and municipal liens had accrued,[5] that the Debtor had

provided it with insufficient funds checks and made late payments, that she had  incurred

losses for the months of May through September, 2010, and that the exclusivity period had

expired. Specifically, it asserted that principal, interest and other charges relating to 10

Yeamans Street totaled $1,712,237.51, that municipal liens and other charges totaled

$171,843.22, and that the value of the Trust property was $2,030,000.  It alleged that there was

no equity in the 14 Yeamans Street property as the total liens of $379,073.92 exceeded the

value of  the property, i.e, $295,000.

At about the same time, on December 6, 2010, the Chapter 11 Trustee filed a Motion

for Order Authorizing Private Sale (the "Sale Motion") of the properties held in the Triple-M

---

[5] It asserted the following:

In September 2010, the Bank was advised that obligations for real estate
taxes and water and sewer charges owed to the Cities of Malden and Revere
totaled $485,291.26 as of August 25, 2010 ($305,559.63 owed to Malden and
$179,731.63 owed to Revere) and that such municipal obligations and
interest on overdue municipal obligations is increasing at the rate of
approximately $20,000 per month.  Accordingly, during the first five months
of this case (May 12, 2010 to October 12, 2010) approximately $100,000 of
additional municipal obligations have accrued. . . .

Realty Trust, which consisted of 12 commercial storefront units and 10 residential units: a single family residence, a two-family residence, a four-family residence, and three condo-style units, for $1.9 million.  The Chapter 7 Trustee of Robert Mammola's case filed an objection to both the Bank's motion for relief from the automatic stay and the Chapter 11 Trustee's sale motion on the same grounds.  He asserted that Robert Mammola "has at least a fifty percent (50%) equitable ownership interest in the property proposed to be sold, and that Trustee Dwyer lacks the requisite authority to consummate the sale." He added that he would consent to the sale if the net proceeds, after payment of allowed secured claims, closing costs, and the broker's commission, were held by the Chapter 11 Trustee pending a determination of the respective ownership rights of the two bankruptcy estates.[6]

Robert Mammola also filed a response in the Debtor's case, which he captioned "Re: Objection by Chapter 7 Trustee of Robert Mammola to Chapter 11 Trustee's Motion for Order Authorizing Private Sale of Property." In his response, he stated, in relevant part the following:

---

[6] Specifically, the Chapter 7 Trustee of Robert Mammola's case alleged, among other things, that the Triple- M Realty Trust was a sham trust, that Robert Mammola executed and delivered to Mt. Washington Bank a certified Personal Financial Statement, certifying that he owned $14,060,000 in real estate, including 100% of the asserted fair market value of the property owned by the Triple-M Realty Trust, and that on November 22, 2008 he provided another certified personal financial statement to Mt. Washington on behalf of the Debtors, adding that there was another financial statement dated February 17, 2007 signed by both debtors as the sole beneficial owners.  The Chapter 7 Trustee also points to beneficiary certificates in which the Mammolas identified themselves as 100% owners of 10 Yeamans Street.

Provisions of all three (3) Trusts were never disregarded. . . .

Income from the trust paid housing, 34 Mammola Way, food, clothing, cars, and college for the beneficiaries.

Robert Mammola received approximately $40,000 per year as manager of the three (3) trusts.

The banks required Robert Mammola to sign as guarantor on every loan.

*Robert Mammola has zero (0) beneficial interest in all four (4) trusts.*

(emphasis supplied).

The Chapter 11 Trustee, on December 22, 2010, filed a Response to the Bank's Motion

for Relief from Stay, stating:

The reorganization is reasonably is [sic] prospect given the commitment of the Malden non-debtor beneficiaries to contribute their surplus funds to payment of the Revere municipal obligations. The beneficiaries are the Debtor and her daughter and two stepdaughters. Each has a 25% interest. The Chapter 11 Trustee has been informed that Robert Mammola's Chapter 7 Trustee may assert that the beneficiaries are in fact Robert Mammola and his wife, the Chapter 11 debtor in this case, 50/50. If such a challenge is timely made, the prudent course is to promptly market and sell the 10 Yeamans Street property. This would preserve the cash flow, which is sufficient to pay taxes, mortgage, and water and sewer and other expenses of the property on a current basis, while likely generating a surplus at private sale, and certainly avoiding the deficiency claim that would result from foreclosure sale. Interested buyers could elect to bid on both 10 and 14 properties.

Robert Mammola also filed a Response to the Bank's Motion again denying any beneficial

interest in the Trusts and stating the provisions of the Trusts were never disregarded.

The Bank also filed a Limited Objection to the Chapter 11 Trustee's proposed sale, stating:

The Trustee may intend to abandon the Revere properties because any sale of those properties will generate a substantial capital gains tax to the Chapter 11

11

estate. Thus, the Trustee may be reluctant to pay the real estate taxes, water and sewer charges and interest thereon owed with respect to the Revere properties. However, those municipal charges accrue interest at the rate of 14% and 16% per annum (depending upon whether they are in tax title). Thus, even if the Trustee abandons those properties without paying said municipal charges, the amount of those charges will continue to increase at the foregoing high interest rates and Bank's subsequent foreclosure of its mortgages on the Revere properties will ultimately result in larger deficiency claims which the Bank will assert against the Debtor's estate. If, as the Debtor alleges, her estate is solvent, then it [is] in the estate's best interest to pay some or all of such real estate taxes, water and sewer charges and interest thereon immediately in order to avoid the further accrual of interest at such high rates.

On January 9, 2011, the Court overruled the objections filed to the Chapter 11 Trustee's Sale Motion and directed the Chapter 11 Trustee to hold the proceeds in escrow  pending a determination of the respective ownership rights of the two bankruptcy estates.

One month later, on February 23, 2011, the Court granted the Bank relief from stay with respect to the property held in the 14 Yeamans Street Realty Trust in both the Debtor's case and in Robert Mammola's Chapter 7 case.  The Court also ordered the filing of a disclosure statement and plan of reorganization in the Debtor's case.

On March 2, 2011, the Chapter 11 Trustee and the Debtor filed a Joint Disclosure Statement and Plan of Reorganization predicated upon the Debtor's retention of the property held in the 10 Yeamans Street Realty Trust and the sale of property located at 34 Mammola Way. The Disclosure Statement provided:

> With respect to Mammola Way, the Debtor intends that the property be sold by the Chapter 11 Trustee to fund her Plan. In addition to the Debtor's share, so long as there is no liquidation in a Chapter 7 or foreclosure, the Debtor's daughter, the other beneficiary of Mammola Way, has agreed to allow her interest to remain in the Bankruptcy estate to help fund the Debtor's Plan. Upon receiving and accepting an Offer to purchase the property, the Chapter

11 Trustee will file a motion to sell Mammola Way in addition to all other required documents and motions to allow the sale to take place. If the Chapter 11 Trustee receives no offer on the Mammola Way property within 90 days after the Confirmation Date, the Chapter 11 Trustee will hold a public auction on the Mammola Way property in accordance with the provisions of §363 of the Bankruptcy Code.

The Disclosure Statement garnered objections, including an objection filed by the Bank. The Chapter 11 Trustee and the Debtor attempted to obtain confirmation of a plan of reorganization through the remainder of 2011 and into 2012.

On April 11, 2011, the Chapter 11 Trustee and the Chapter 7 Trustee of Robert Mammola's case filed a Joint Motion to Approve Stipulation together with a Stipulation. The Stipulation was signed by the Chapter 11 Trustee, the Chapter 7 Trustee of Robert Mammola's case, the Debtor, Deborah Mammola Cenci, Diane Mammola, and Michela Mammola, by her counsel, Mark E. Burke, Esq. The Joint Motions and Stipulation were filed in both cases. The parties summarized the Stipulation as follows:

9. Upon Bankruptcy Court approval of the Stipulation, Trustee Dwyer shall forthwith pay to Trustee Murphy the sum of $75,000.00 (the "Initial Payment") from the Malden Property Proceeds. The named beneficiaries of Triple M hereby consent to the distribution of the Malden Property Proceeds to make the Initial Payment.

10. Trustee Dwyer shall forthwith retain a real estate broker to market and sell the Medford Property. In the event that the gross sales price for the Medford Property exceeds $700,000.00, Trustee Dwyer shall pay to Trustee Murphy fifty percent (50%) of the gross sale proceeds in excess of $700,000.00, subject to a maximum additional amount of $25,000.00 (the "Additional Payment" and, together with the Initial Payment, the "Payments").

11. The Payments shall constitute property of the bankruptcy estate of R. Mammola, free and clear of all liens, claims, encumbrances, interests, and rights of exemption.

12. The capital gains resulting from the sale of the Malden Property shall be allocated as follows: $120,000.00 of capital gain allocated to the bankruptcy estate of R. Mammola and the balance allocated to the bankruptcy estate of S. Mammola. No other tax liability, including capital gains and/or income tax liability, relating to Triple M, Fourteen Yeamans Trust, the Ten Yeamans Trust, and the Mammola Way Realty Trust, and the properties held by such trusts, shall be attributed to the bankruptcy estate of R. Mammola [sic]

13. The Payments shall be in full satisfaction of the claims of the bankruptcy estate of R. Mammola to an equitable interest in any assets held by Triple M, the Ten Yeamans Trust, the Fourteen Yeamans Trust, and the Mammola Way Trust.

14. Upon Bankruptcy Court approval of this Stipulation, Trustee Murphy shall be deemed to have abandoned the R. Mammola estate's interest in 10 Yeamans.

15. Other than as provided in the Stipulation, *Trustee Murphy shall be deemed to have waived and released any and all claims against Trustee Dwyer, the bankruptcy estate of S. Mammola, Diane Mammola, Debora Mammola, and Michaela* [sic] *Mammola.* Other than as provided in the Stipulation, Trustee Dwyer, the bankruptcy estate of S. Mammola, S. Mammola, Diane Mammola, Debora Mammola, and Michaela [sic] Mammola shall be deemed to have waived and released any and all claims against Trustee Murphy and the bankruptcy estate of R. Mammola.

(emphasis supplied). The Chapter 11 Trustee served notice of the hearing on the Joint Motion to Approve Stipulation on all creditors and the U.S. trustee. In addition, the Chapter 11 Trustee served notice of the hearing to consider the Stipulation by first class mail on Robert Mammola at 34 Mammola Way, Medford, Massachusetts. The Court granted the Motion and approved the Stipulation on May 5, 2011 in both the Debtor's case and Robert Mammola's case.

The Chapter 11 Trustee and the Debtor were unable to obtain confirmation of a Chapter 11 plan of reorganization. Nevertheless, the Chapter 11 Trustee succeeded in selling

34 Mammola Way.  The Court authorized the sale on August 16, 2011.  The sale was properly

noticed to all creditors and parties in interest, as well as Robert Mammola; there were no

objections or counteroffers.  In addition, on September 20, 2011, the Chapter 11 Trustee filed

a Notice of Proposed Abandonment of the property described as being held in "the name of

Seta Mammola as Trustee of the Ten Yeamans Street Realty Trust u/d/t dated December 1,

1994 and recorded with the Suffolk County Registry of Deeds . . . (the "Trust"). The Debtor

has a 25% beneficial interest. The building has 26 residential apartments and 5 street level

commercial units."[7]   The Notice of Abandonment was served on Robert Mammola.

Moreover, on September 27, 2011, the Court granted the Bank relief from stay with respect

to the 10 Yeamans Street property which coincided with the withdrawal of the First Amended

Chapter 11 Plan.

During the course of the Debtor's bankruptcy case, as well as during the course of

Robert Mammola's Chapter 7 case, members of the Mammola family would file affidavits

---

[7]  On January 25, 2012, the Court entered the following order:

The Court shall treat the Motion (#452) as a Motion for Clarification. The
Court clarifies that the Notice of Proposed Abandonment (#393) was
approved and the Court, to the extent necessary, overrules any purported
objection to the abandonment in the Response filed by Diane and Michaela
[sic] Mammola (#396). The Court approved the Notice of Abandonment in
conjunction with the allowance of the Motion of East Boston Savings Bank
for Relief Stay at a hearing on September 27, 2011. Accordingly, the Trustee
is entitled to a certificate that there are no outstanding objections to the
abandonment of 10 Yeamans Street, Revere, Massachusetts. The Court
denies the Emergency Motion to Stay Foreclosure Sale (#453).

expressing displeasure with how the bankruptcy cases were proceeding. The Court declined to take action with respect to the affidavits as no requests for orders were included in them. For example, the Court stated the following with respect to an affidavit filed by Michela Mammola: "A request for an order or other form of relief must be made by motion or through the commencement of an adversary proceeding and served on the appropriate parties. *See* Fed. R. Bankr. P. 9013 and 7001."

On July 27, 2012, Michela Mammola, through her successor counsel, Joseph V. Cattoggio, Jr., Esq., filed an Emergency Motion to Order Chapter 11 Trustee to Disburse Funds Held in Escrow. Pursuant to her motion, Michela Mammola sought an order directing the Chapter 11 Trustee to release $150,000 to her, as 50% beneficiary of the Mammola Way Realty Trust, from the $300,000 being held from the sale of 34 Mammola Way and successful litigation against Rockland Trust Company. The Chapter 11 Trustee filed a response, noting that she had "received a notice of lien from attorney Mark Burke, Esq. for fees in the amount of $4,000 due from Michela for Authorization to Disburse Funds Held in Escrow for legal services rendered to Michela, which lien notice requires the Trustee to hold that sum pending resolution." The parties resolved that dispute and, pursuant to a Joint Motion, executed by the Chapter 11 Trustee and Attorney Cattoggio filed on October 15, 2012, agreed that $110,000 would be released to Michela Mammola, subject to a $40,000 hold back from the $150,000 in funds being held in escrow to cover any costs and expenses associated with the adversary proceeding against Rockland Trust. The Court approved the Joint Motion on October 30, 2012.

On April 22, 2013, the Chapter 11 Trustee filed a Motion to Convert the Debtor's

16

Chapter 11 case to a case under Chapter 7. In support of her motion, the Chapter 11 Trustee

informed the Court that the Debtor was no longer a plan proponent. She explained:

> The assets in this case consisted primarily of interests in trusts holding real
> estate which real estate has been sold or formally abandoned . . .

> The sole remaining matters are (a) Rockland Trust Company's payment of
> $10,043.68 to the estate pursuant to the agreed judgment, and (b) determination
> of the amount to be contributed to the estate by Michela Mammola in
> connection with the Rockland Trust Company litigation. Pursuant to a
> Stipulation approved by the Court on October 16, 2012, the Trustee is holding
> $40,000 of Michela's sale proceeds, which far exceeds 50% of the RTC litigation
> cost. The Trustee anticipates an allocation will be agreed to in the near future
> and submitted to the Court for approval.

The Court granted the Chapter 11 Trustee's Motion. The Court entered a discharge order in

favor of the Debtor on October 24, 2013.

On December 22, 2014, Robert Mammola filed a Complaint against the Defendants,

and, on February 27, 2015, he filed the Amended Complaint which the Defendants now seek

to dismiss. Prior to filing of this adversary proceeding, Diane Mammola and Michela

Mammola commenced an action against the Trustee and the Firm in the United States District

Court for the District of Massachusetts, alleging, in the words of the court, "that because of

the defendants' unlawful conduct during the Debtor's bankruptcy proceedings the family real

estate business was effectively destroyed and they were forced to sell their residence in

Medford, Massachusetts." Citing the Barton doctrine, *see* Barton v. Barbour, 104 U.S. 126, 127

(1881), the district court dismissed their complaint. The court also determined that 28 U.S.C.

§ 959(a) was inapplicable, stating "when, as here, a plaintiff's complaint is based upon the

trustee's misconduct in liquidating assets and administering property of the estate but not the

17

tortious acts committed in furtherance of the debtor's business." *See* <u>Mammola v. Dwyer</u>, 497

B.R. 1, 3 (D. Mass. 2013). *See also* <u>Mammola v. Dwyer</u>, No. 14-cv-11376-NMG, 2014 WL

3810157 (D. Mass. July 31, 2014) (noting that "[t]his Court has already addressed a nearly

identical case filed by the Mammolas, the court dismissed the Mammolas complaint under

the <u>Barton</u> doctrine.").

   B. <u>Robert Mammola's Chapter 7 Case</u>

   Before addressing Robert Mammola's Amended Complaint, the Court notes that

Robert Mammola filed an individual Chapter 7 case, Case No. 10-18070-JNF, on July 27, 2010

and received a discharge on December 17, 2010.  In addition, the Bank filed, on January 7,

2011, a "Motion for Relief from the Automatic Stay with respect to 10 and 14 Yeamans Street

Revere Massachusetts, or, Alternatively, for Determination that the Automatic Stay Is Not

Applicable."  The Chapter 11 Trustee of the Debtor's case filed an objection to the motion in

Robert Mammola's case, stating:

> The Seta Mammola's estate [sic] is a co-owner of the 10 and 14 Yeamans Street,
> Revere properies. The Chapter 11 Trustee is marketing the 14 Yeamans Street
> properties in conjunction with the marketing of the 10 Yeamans Street property
> because 14 Yeamans Street provides parking for 10 Yeamans Street and it is
> very possible that a party interested in 10 Yeamans Street would want to
> acquire 14 Yeamans Street as well. Active foreclosure status for 14 Yeamans
> Street will impede a transaction potentially very beneficial to creditors,
> particularly to East Boston Savings Bank.

On February 23, 2011, the Court granted the Bank's Motion with respect to 14 Yeamans Street,

Revere, Massachusetts in Robert Mammola's case due to lack of equity and because the Bank

lacked adequate protection as a result of the accrual of real estate tax debt, interest and water

charges.  The Chapter 7 Trustee  in Robert Mammola's case subsequently filed a Notice of

Abandonment with respect to 14 Yeamans Street.

On April 8, 2011, the parties filed the Joint Motion to Approve Stipulation by and

Among Chapter 7 Trustee of Robert Mammola, Chapter 11 Trustee of Seta Mammola, Debora

Mammola, Diane Mammola, and Michela Mammola, in Robert Mammola's case.  The Cout

approved the Joint Motion on May 5, 2011, the same day it granted the Joint Motion in the

Debtor's case.  The Stipulation which the Chapter 7 Trustee executed provided, in relevant

part, that "[t]he payments shall be in full satisfaction of the claims of the bankruptcy estate

of R. Mammola to an equitable interest in any assets held by Triple M, the Ten Yeamans Trust,

the Fourteen Yeamans Trust, and the Mammola Way Realty Trust," and "[u]pon Bankruptcy

Court approval of this Stipulation, Trustee Murphy shall be deemed to have abandoned the

R. Mammola estate's interest in 10 Yeamans."  On September 27, 2011, the Court granted the

Bank relief from stay as to 10 Yeamans Street.  Robert Mammola did not file a notice of appeal

from this order.

The Chapter 7 Trustee filed a Final Report to which Robert Mammola objected.  The

Court, on August 6, 2013, overruled the Objection, stating the following:

> Upon consideration of the Trustee's Final Account and Report Before
> Distribution, including the requests for approval of the trustee's commission,
> the request for compensation of trustee's counsel and the request for
> compensation of the trustee's accountant, the objection filed by the debtor, the
> argument of the trustee and the debtor made at the hearing held on August 6,
> 2013, the decision cited by the trustee, In re Kristan, 2008 WL  8664765 (B.A.P.
> 1st Cir. 2008), and the entire record of proceedings in this case, the Court
> overrules the debtor's objection.  The debtor lacks standing to object to the
> trustee's final account, including the requests for compensation, because he has

19

been granted a discharge and because this is not a surplus case as general unsecured creditors are only receiving a modest dividend on their claims. *See* In re McDonald, 430 B.R. 5, 8-9 (Bankr. D. Me. 2010). Notwithstanding the debtor's lack of standing, at the hearing, the Court asked the debtor to clarify the issues he raised in his written objection. The debtor's objections to the trustee's services relate to the compromise that the trustee reached with the trustee of his wife's bankruptcy estate, which compromise was approved and was the subject of a final order. In addition, the debtor takes issue with the results achieved in his spouse's bankruptcy case. Although the debtor is unhappy with the outcome of his bankruptcy case and that of his spouse, he has asserted no valid legal or factual arguments to justify disallowance of the trustee's account or reduction in the amounts sought by the trustee, his counsel and his accountant, as the compensation requested is reasonable, particularly where the trustee and his counsel have voluntarily reduced their requests for compensation.

On February 3, 2014, Robert Mammola filed an Opposition to the Chapter 7 Trustee's "Application for Commissions," which the Court overruled on February 19, 2014. The Debtor did not file a Notice of Appeal with respect to the Court's approval of the Trustee's Final Report, the Order allowing compensation to the professionals employed in the case, or the Court's approval of the Trustee's Final Report and Account after Distribution and Request for Discharge. Robert Mammola's case was closed on March 31, 2014.

C. The Adversary Proceeding

Robert Mammola's original 13-page Complaint lacked numbered paragraphs and separately numbered counts for relief. The Defendants moved to dismiss, asserting, among other things, the following:

The Plaintiff's thirteen-page (with eleven additional pages of exhibits) rambling complaint is incomprehensible beyond a few inflammatory but factually unsubstantiated accusations against the Defendants. The complaint is not set out in separately-numbered paragraphs or counts and does not adequately plead or specify any particular cause of action against any Defendant.

20

The Plaintiff lacks standing to assert any claims against the Defendants because any such claims, if they exist at all, belong or belonged to the Chapter 7 Trustee in the Plaintiff's own bankruptcy case (Docket No. 10-18070).

On February 9, 2015, this Court entered the following order:

Upon consideration of the Complaint, the Motion to Dismiss, and the Plaintiff's Response to the Motion to Dismiss, the Court shall treat the Motion to Dismiss as a Motion for a More Definite Statement. The Court hereby orders the Plaintiff to file an Amended Complaint, within 28 days of the date of this order, specifically setting forth his standing to assert claims against the Trustee of the estate of Seta Rose Mammola, as opposed to claims against the Trustee in his personal bankruptcy case, as well as his specific claims for relief, as opposed to those allegedly held by family member[s] whom he cannot represent.

On February 27, 2015, Robert Mammola filed an Amended Complaint. In his Amended Complaint he set forth, in pertinent part, the following:

As the settlor of the Triple M. [sic] Realty Trust, 10 & 14 Yeamans Street Realty Trust, each recorded at the respective registry of deeds, I have an expectancy for the trusts to be followed as intended in the terms of the Trust.

Citing "The Uniform Trust Code, 'UTC' sections 410-417, he states that "'[t]he overall objective of these sections is to enhance flexibility consistent with the principle that preserving the settlor's intent is paramount. [sic] '" (footnote omitted) He adds that "Massachusetts Law makes it very clear if the Settlor retained the power to amend and direct the disposition of principal and income may revoke the trust or any such powers in his lifetime then the trust is revokable. In short the Settlor has total control."

Robert Mammola also maintains that he is a party in interest with standing to maintain an action against the Defendants because "it cannot be seriously question [sic] that the loss of the protections afforded by the Bankruptcy Code qualifies as an injury." He alleges:

> I have and continue to be directly harmed by Dwyer's misconduct, intentional misrepresentations, failure to notice me in her motions. By allowing claims and allegations about my "ownership" without any examination of proof regardless of all the documentation I had supplied to her in her offices, and ignoring the fact that I had been deposed twice with respect to the trust properties [sic].

He cites, among other things, the Chapter 11 Trustee's retention of the income from the Trusts, her failure to pay bills relating to 34 Mammola Way, the loss of his residence, the extreme duress of being forced out of his home with no funds and no where to go, a circumstance exacerbating his existing heart condition, the Trustee's misconduct in handling the closing of the sale of the property in the Triple-M Realty Trust, resulting in his liability for, and arrest warrants relating to, bills due from the closing.  Robert Mammola also references breach of agreements the Chapter 11 Trustee allegedly made with his children with respect to the payment of taxes owed to the City of Revere and the City of Malden, and her representation that she was actively marketing 10 and 14 Yeamans Street.  In addition, he complains about lack of notice provided to him and his children by the Trustee in the Debtor's case and her "intentional misrepresentations" in her Motion for Order Authorizing Private Sale of the property held in the Triple-M Realty Trust and her response to the Bank's Motion for Relief from Stay which it filed on December 2, 2010.  He also asserts that when he filed his Chapter 7 petition, he did not claim a homestead exemption on Schedule C, believing that he would remain in the family home located at 34 Mammola Way because of the Chapter 11 Trustee's agreement with his daughter. He further alleges that the Trustee "did not abide by the binding terms of the trust instrument that as the settlor, the trusts were created to benefit my wife and children upon acquiring both Triple M and 10 Yeamans Street both in 1994. [sic]"

Robert Mammola also complains about perceived conflicts of interest between his Chapter

7 Trustee and the Chapter 11 Trustee in the Debtor's case, alleging that "Dwyer . . . used her

position with this court to deny the rights of the beneficiaries with rights of survivorship, that

as the settlor placed total control of the properties and the rights in the beneficiaries." He

concludes with a plea that his due process rights be honored by this Court, while noting that

he is 70 years old, receives $805.00 per month in social security income, before a deduction

of $100 per month toward payments to the Massachusetts Department of Revenue, and food

stamps.

## III. STANDARD FOR DISMISSAL

A. <u>Dismissal Standard</u>

In <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50 (1st Cir. 2012), the United

States Court of Appeals for the First Circuit set forth the proper paradigm for consideration

of motions to dismiss. Citing <u>Ocasio–Hernández v. Fortuño–Burset</u>, 640 F.3d 1, 7, 11–13 (1st

Cir. 2011), it stated:

> <u>Ocasio–Hernández</u> points the way to the proper handling of a motion to
> dismiss. Step one: isolate and ignore statements in the complaint that simply
> offer legal labels and conclusions or merely rehash cause-of-action elements. <u>Id.</u>
> at 12 (discussing, among other cases, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct.
> 1937, 1949, 173 L.Ed.2d 868 (2009), and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.
> 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Step two: take the complaint's
> well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all
> reasonable inferences in the pleader's favor, and see if they plausibly narrate
> a claim for relief. <u>Id.</u> (again, discussing <u>Iqbal</u> and <u>Twombly</u>, among others); *see
> also* <u>S.E.C. v. Tambone</u>, 597 F.3d 436, 441–42 (1st Cir. 2010) (en banc). Plausible,
> of course, means something more than merely possible, and gauging a pleaded
> situation's plausibility is a "context-specific" job that compels us "to draw on"
> our "judicial experience and common sense." <u>Iqbal</u>, 129 S.Ct. at 1949, 1950. And

23

in performing our review, we realize too that we can consider (a) "implications from documents" attached to or fairly "incorporated into the complaint," (b) "facts" susceptible to "judicial notice," and (c) "concessions" in plaintiff's "response to the motion to dismiss." <u>Arturet–Vélez v. R.J. Reynolds Tobacco Co.</u>, 429 F.3d 10, 13 n. 2 (1st Cir. 2005); *see also* <u>Haley v. City of Boston</u>, 657 F.3d 39, 44, 46 (1st Cir. 2011).

<u>Schatz</u>, 669 F.3d at 55-56 (footnote omitted).

## IV. DISCUSSION

The Court concludes that Robert Mammola has failed to state a plausible claim for relief against Kathleen Dwyer either as Chapter 11 Trustee or as Chapter 7 Trustee, or against her Firm, under the standard set forth by the Untied States Court of Appeals for the First Circuit in <u>Schatz</u>.  In the first place, Robert Mammola lacks standing to commence an action against the Defendants.  According to the United States Court of Appeals for the First Circuit in <u>LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.</u>), 196 F.3d 1 (1st Cir. 1999), *cert. denied*, 530 U.S. 1230 (2000),

> The Bankruptcy Code provides that "[a] party in interest, including . . . a creditor . . ., may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Chapter 7 includes no comparable provision, but in practice bankruptcy courts routinely entertain adversary proceedings against Chapter 7 trustees.  *See, e.g.*, <u>Yadkin Valley Bank & Trust Co. v. McGee</u>, 819 F.2d 74 (4th Cir.1987); <u>Kowalski–Schmidt v. Forsch (In re Giordano)</u>, 212 B.R. 617 (B.A.P. 9th Cir. 1997); <u>United States ex rel. George Schumann Tire & Battery Co. v. Grant (In re George Schumann Tire & Battery Co.</u>), 145 B.R. 104 (Bankr. M.D. Fla. 1992); <u>White County Bank v. Leavell ( In re Leavell)</u>, 141 B.R. 393 (Bankr. S.D. Ill. 1992). In light of the structure and purposes of the Bankruptcy Code, we agree with these courts that the right to be heard applies in the liquidation context.

<u>In re Mailman Steam Carpet Cleaning Corp.</u>. 199 F.3d at 5.  As noted above, Robert Mammola is not a creditor of the bankruptcy estate as he did not file a proof of claim in the Debtor's

case, and he did not assert an ownership interest in any of the properties for which the Debtor served as trustee and held a beneficial interest.  He did not serve as trustee of any of the trusts, although he received a management fee and the income was used to pay for family expenses, as well as costs associated with the family home located at 34 Mammola Way where he lived. Indeed, in his  Response to Harold Murphy's Objection to the Chapter 11 Trustee's proposed sale of the property held in the Triple-M Realty Trust, he stated that "Robert Mammola has zero (0) beneficial interest in all four (4) trusts."

As Robert Mammola is not an attorney, he may not practice law and cannot legally represent any of the beneficiaries of the Trusts.  Moreover, to the extent that Robert Mammola had any claims against, or beneficial interest in, the Debtor's estate, those were settled by his Chapter 7 Trustee pursuant to a Joint Motion and Stipulation approved, after notice and a hearing, by this Court on May 5, 2011 in both Robert Mammola's Chapter 7 case and the Debtor's case.  That Stipulation was signed by Harold B. Murphy, Chapter 7 Trustee of Robert Mammola's bankruptcy estate, the Chapter 11 Trustee, the Debtor, Diane Mammola, Deborah Mammola Cenci, and Michela Mammola by her counsel.  The Court's docket unequivocally establishes that the Chapter 11 Trustee served notice of the hearing to consider the Joint Motion and Stipulation by first class mail on Robert Mammola at 34 Mammola Way, Medford, Massachusetts.  Under these circumstances, the Court concludes that Robert Mammola has failed to state a plausible claim as to his standing to commence an action against Kathleen Dwyer and the Firm.

Assuming arguendo that Robert Mammola established standing to assert claims

25

against Kathleen Dwyer and the Firm as a result of residing at 34 Mammola Way, his

assertion that the Chapter 11 Trustee succeeded to the Debtor's role as either settlor or trustee

of the Trusts is without foundation for the reasons set forth below. The Trustee, whether in

her capacity as Chapter 11 Trustee or Chapter 7 Trustee, owed and still owes fiduciary duties

to the creditors of the Debtor's estate, not the beneficiaries of the Trusts. In other words,

simply because the beneficiaries of the nominee trusts were empowered to direct the actions

of the trustee, that authority did not survive the filing of the Debtor's bankruptcy petition.

At that point, the Debtor in possession and later the Trustee were statutorily required to act

for the benefit of the Debtor's creditors. All the Trusts were Massachusetts nominee trusts,

and, accordingly, the beneficiaries had, prior to the Debtor's bankruptcy case, ultimate control

over the Trusts and their assets. According to the court in <u>Houghton v. Szwyd (In re Szwyd)</u>,

370 B.R. 882 (B.A.P. 1st Cir. 2007),

> A nominee trust is "an entity created for the purpose of holding legal title to
> property with the trustees having only perfunctory duties." <u>Roberts v. Roberts</u>,
> 419 Mass. 685, 646 N.E.2d 1061, 1062 (1995) (internal citations omitted). "Unlike
> . . . a [traditional trust] the trustees of a nominee trust have no power, as such,
> to act in respect of the trust property, but may only act at the direction of . . . the
> beneficiaries." <u>Id.</u> (internal citations omitted). "Nominee trusts have
> characteristics of both agency and trust; the trustee is an 'agent-trustee' who
> holds title to property 'for the benefit of and subject to the control of another.'"
> <u>Id.</u> at 1063. Nominee trusts are subject to the rules of agency for certain
> purposes. <u>Id.</u> Contrary to the norm, the Myszka Nominee Realty Trust gives
> wide powers to the trustees with respect to the real property. But those powers
> are ephemeral. The beneficiaries have ultimate control because of their
> unfettered rights to terminate the trust and replace the trustees.

<u>Szwyd</u>, 370 B.R. at 884 (footnote omitted).

As Robert Mammola disclaimed any beneficial interests in the Trusts and vehemently

objected to his Chapter 7 Trustee's assertion that he held a 50% beneficial interest in any of the Trusts, he is estopped from asserting any standing as a person aggrieved based on any beneficial interests in the Trusts or any right to revoke the Trusts as settlor.

Robert Mammola misapprehends the roles of Chapter 7 and Chapter 11 trustees, and his grievances highlight the difficulties of pro se debtors with complex financial affairs who lack representation and knowledge of the bankruptcy process. The duties of bankruptcy trustees are governed by statute, *see* 11 U.S.C. §§ 704(a) and 1106(a); 28 U.S.C. § 959(b).[8]  In Pereira v. Foong (In re Ngan Gung Restaurant), 254 B.R. 566 (Bankr. S.D.N.Y. 2000), a Chapter 7 trustee commenced an action against the former Chapter 11 trustee, seeking a determination that the Chapter 7 trustee was personally liable to the estate for "unpaid taxes for the period from December 8, 1995 through February 28, 1997, disclosing employment taxes of $28,775.95 and sales taxes of $130,083.33 owed to the State of New York, and employment taxes of $348,226.51 owed to the Internal Revenue Service," as well as accrued health benefit obligations of $60,000." 254 B.R. at 568.  The court explained the role of the trustee:

---

[8] Section 959(b) provides:

. . . a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).

A trustee has the statutory duty to protect and preserve property of the estate for the purpose of *maximizing a distribution to creditors*. *See* 11 U.S.C. § 1106(a); Daniel B. Bogart, Liability of Directors of Chapter 11 Debtors in Possession, 68 Am. Bankr. L. J. 155, 186 (Spring, 1994). *A trustee also owes a fiduciary duty to each creditor of the estate.* Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); Gorski v. Kirschenbaum ( In re Gorski), 766 F.2d 723, 725–726 (2nd Cir.1985) (adopting the reasoning in Hall v. Perry ( In re Cochise College Park), 703 F.2d 1339, 1357 (9th Cir.1983)); Bogart, supra, 68 Am.Bankr.L.J. at 186–88. "As such, he has a duty to treat all creditors fairly and exercise that measure of care and diligence that an ordinary prudent person under similar circumstances would exercise." Cochise, 703 F.2d at 1357. In the performance of those duties, a trustee is obligated to pay taxes incurred during the administration of the case. See 28 U.S.C. §§ 959(b) and 960.

In re Ngan Gung Restaurant, 254 B.R. at 570. A bankruptcy trustee may only be personally liable . . . for deliberate or negligent acts or omissions which harm the bankruptcy estate. Id. (citing In re Gorski, 766 F.2d at 726). Moreover, a trustee may not be liable for objectively reasonable mistakes in judgment where discretion is allowed. In re Ngan Gung Restaurant, 254 B.R. at 570 (citations omitted). When acting in accordance with statutory or other duty or pursuant to court order, a trustee is immune from suit for personal liability for such acts. Id. (citing Mosser v. Darrow, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951); Malm v. Goldin, 1993 WL 330489, *4, n. 2 (S.D.N.Y.1993), and Dana Commercial Credit Corp. v. Nisselson (In re Center Teleproductions, Inc.), 112 B.R. 567, 576, 578 (Bankr. S.D.N.Y. 1990)).

The United States Court of Appeals for the First Circuit in In re Mailman Steam Carpet Cleaning Corp., stated:

The exact parameters of a trustee's fiduciary duties and the potential penalties for breach thereof are not fixed by the Bankruptcy Code, and the case law is somewhat murky at the edges. It is settled, however, that a bankruptcy trustee may be held personally liable for breach of the duty of loyalty. *See* Mosser v. Darrow, 341 U.S. 267, 271, 274, 71 S.Ct. 680, 95 L.Ed. 927 (1951). The Mosser

28

Court surcharged a bankruptcy trustee for expressly permitting two employees to profit by selling securities to the estate, declaring in unqualified terms that "[e]quity tolerates in bankruptcy trustees no interest adverse to the trust." <u>Id.</u> at 271, 71 S.Ct. 680.

<center>***</center>

In our view, <u>Mosser</u>, properly construed, strongly indicates that parties interested in the administration of a bankruptcy estate can seek to surcharge the trustee for negligence. While <u>Mosser</u> itself involved "a willful and deliberate setting up of an interest in employees adverse to that of the trust," the Court took pains to clarify that "[t]he liability here is not created by a failure to detect defalcations, in which case negligence might be required to surcharge the trustee. . . ." 341 U.S. at 272, 71 S.Ct. 680. The unmistakable implication of this observation is that, in the absence of deliberate misconduct, negligence suffices for surcharge. Indeed, even the courts of appeals that decline to impose personal liability for negligence draw this inference. *See, e.g.*, <u>Sherr</u>, 552 F.2d at 1375 ("A trustee in bankruptcy may be held liable in his official capacity and thus surcharged if he fails to exercise that degree of care required of an ordinarily prudent person serving in such capacity, taking into consideration the discretion allowed."). These courts, however, differentiate between surcharges and personal liability, presumably relying on the <u>Mosser</u> Court's statement that "[t]he most effective sanction for good administration is personal liability for the consequences of forbidden acts." 341 U.S. at 274, 71 S.Ct. 680. Because only willful misconduct is "forbidden," the argument goes, negligence does not trigger personal liability.

This reasoning is tautological: whether or not negligent conduct is "forbidden" is the question, not part of the answer. More importantly, the reasoning depends on a misunderstanding of the word "surcharge," which is most fittingly defined as "[t]he imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of his fiduciary duties." *Black's Law Dictionary* 1441 (6th ed.1990). Given this definition, there is simply no principled way after <u>Mosser</u> to avoid the conclusion that a bankruptcy trustee can be personally liable for negligent breach of fiduciary duty. . . .

<u>In re Mailman Steam Carpet Cleaning Corp.</u>, 196 F.3d at 6-7 (footnote omitted).[9]

---

[9] The First Circuit observed:

Following <u>Mosser</u>, the courts of appeals have split almost evenly on the

<center>29</center>

Robert Mammola appears to be alleging that the Trustee engaged in intentional

misconduct because she "allowed claims and allegations about my 'ownership' without any

examination of proof regardless of all the documentation I had supplied to her in her offices,"

an allegation that compels an inference that she owed him a duty to litigate  Chapter 7

Trustee's claims in  his case that he was an equitable owner of the Trust properties listed in

the Debtor's case.  Notably, he ignores the Joint Motion and Stipulation filed in both his case

and the Debtor's case in April of 2011 when the Chapter 7 Trustee in his case and the Chapter

11 Trustee in the Debtor's case resolved those claims.  The Court granted the Joint Motion and

approved the Stipulation in both cases on May 5, 2011 after full and adequate notice to all

parties in interest.  There were no timely appeals from the Court's orders of May 5, 2011.

The Debtor also alleges failures with respect to the sales of the Triple-M properties and

34 Mammola Way. His allegations overlook several significant circumstances, including the

---

question of whether a bankruptcy trustee can be held personally liable for
negligence (as opposed to deliberate misconduct). *Compare* In re Gorski, 766
F.2d 723, 727 (2d Cir. 1985) (responding in the affirmative), Red Carpet
Corp. v. Miller, 708 F.2d 1576, 1578 (11th Cir. 1983) (per curiam) (same), and
Hall v. Perry ( In re Cochise College Park, Inc.), 703 F.2d 1339, 1357 (9th Cir.
1983) (same), with Yadkin Valley, 819 F.2d at 76 (responding in the
negative), In re Chicago Pac. Corp., 773 F.2d 909, 915 (7th Cir. 1985) (dictum)
(same), Ford Motor Credit Co. v. Weaver, 680 F.2d 451, 461–62 (6th Cir.
1982) (same), and Sherr v. Winkler, 552 F.2d 1367, 1375 (10th Cir. 1977)
(same). We heretofore have left the question open. *See* Lopez–Stubbe v.
Rodriguez–Estrada ( In re San Juan Hotel Corp.), 847 F.2d 931, 937 & n. 5 (1st
Cir. 1988); Connecticut Gen. Life Ins. Co. v. Universal Ins. Co., 838 F.2d 612,
621 (1st Cir. 1988).

196 F.3d at 7.

absence of any fiduciary duties owed to him by Kathleen Dwyer or the Firm.  In the first

place, the sales of the Triple-M Realty Trust properties and the sale of 34 Mammola Way,

which was held in the Mammola Way Realty Trust, were authorized by this Court after notice

and a hearing.  *See* In re Mailman Steam Carpet Cleaning Corp., 196 F.3d at 8 ("a trustee

acting with the explicit approval of a bankruptcy court is entitled to absolute immunity, as

long as there has been full and frank disclosure to creditors and the court").  Indeed, Robert

Mammola filed in the Debtor's case a Response to his Chapter 7 Trustee's Objection to the

sale.  The Court considered Robert Mammola's position, as well as those of other objecting

parties, and authorized the sale on January 19, 2011.  Similarly, the Chapter 11 Trustee's

Motion for Order Authorizing Private Sale of 34 Mammola Way was granted by this Court

after notice and a hearing.  Robert M. Mammola was served with notice of the date and time

of the hearing and did not object.  Michela Mammola received at least $110,000 in conjunction

with the sale.  There were no timely appeals from the Court's orders.

Robert Mammola's Amended Complaint exhibits his dissatisfaction that the  Joint

Chapter 11 Plan proposed by the Debtor and the Chapter 11 Trustee was not confirmed,

despite numerous amendments and attempts to address the objections filed by creditors,

especially the Bank.  The Bank's Objection to the Debtor's Motion for Interim and Final

Authority to Use Cash Collateral and its Assented to Motion for Limited Modification of the

Automatic Stay, however, signaled the difficulties the Debtor faced in navigating her case to

a successful conclusion with a confirmed plan of reorganization.  Notably, the Triple-M Realty

Trust and the 10 and 14 Yeamans Street Realty Trusts had failed to pay substantial real estate

31

taxes and water and sewer charges prepetition and were unable to provide adequate

protection to the Bank in the form of full and timely postpetition mortgage and tax payments..

The liens for those unpaid charges were superior to the Bank's mortgage and were in excess

of $300,000, accruing interest at the statutory rate, which, according to the Bank, was at least

14%.

The Debtor was unable to make the payments contemplated under her Stipulation

Providing for Use of Cash Collateral and Grant of Adequate Protection.  Her default

precipitated the appointment of the Chapter 11 Trustee.  The Chapter 11 Trustee was unable

to go forward with the Second Amended Joint Plan as the Debtor no longer wished to be a

plan proponent.  For Robert Mammola to establish some form of misconduct on the part of

the Chapter 11 Trustee,  he would have had to allege, not only that she owed him a duty,  but

that her conduct resulted in harm to the Debtor's bankruptcy estate to the detriment of its

creditors.  In other words, he would have had to establish that but for some action she took

or refuse to take, the Trust properties could have produced sufficient income, or could have

been sold for sufficient funds, to satisfy the liens encumbering the Trust properties, together

with circumstances that would have permitted the funding of a plan or reorganization  that

would satisfy 11 U.S.C. § 1129(a).  As the Debtor did not file a claim in the Debtor's case, he

has no standing to complain about the absence of a confirmed plan or the amount of any

dividend that creditors may receive in the Debtor's case.

While the Chapter 11 Trustee and the Debtor attempted to address the Bank's secured

claims and outstanding tax debt, the inability to do so had more to do with the absence of

32

higher offers for the Debtor's interests in the Trust properties than any misconduct on the part of the Trustee. The Court concludes that Robert Mammola simply does not understand the consequences attendant to his personal bankruptcy and the failed Chapter 11 reorganization of his spouse, Seta Rose Mammola. He appears to be operating under the misapprehension that his estate planning goals and the retention of assets by his spouse and daughters would not be affected by the bankruptcy petitions. He has no legitimate grievance against the Trustee for doing her job.

## IV. CONCLUSION

For the foregoing reasons, the Court shall enter an order granting the Defendants' Motion to Dismiss Robert Mammola's Amended Complaint for lack of standing and for failure to state any plausible claims for relief against the Defendants.

By the Court,

Joan N. Feeney

Joan n. Feeney
United States Bankruptcy Judge

Dated: April 9, 2015